IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN D. BARTOS, | : | Civil No. 1:08-CV-0366 |
|     Plaintiff, | : | |
| | : | |
|   vs. | : | |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, DEPARTMENT | : | |
| OF ENVIRONMENTAL | : | (Chief Judge Kane) |
| PROTECTION; KATHLEEN A. | : | (Magistrate Judge Carlson) |
| MCGINTY, in her individual | : | |
| and official capacity; PATRICK | : | |
| MCDONNELL, in his individual | : | |
| and official capacity; And KENNETH | : | |
| R. REISINGER, in his individual | : | |
| and official capacity, | : | |
|     Defendants | : | |

**MEMORANDUM OPINION AND ORDER**

**I.**     **STATEMENT OF FACTS AND OF THE CASE**

This case is an employment discrimination lawsuit brought by a former employee of the Commonwealth of Pennsylvania, Department of Environmental Protection. This matter comes before the Court on a Motion to Strike Errata Sheet, a motion which documented a disturbing and mendacious pattern of misconduct allegedly undertaken by two state employees who were deposed as witnesses in the course of discovery in this case.

The background of this tale of mendacity can be simply stated: On February

1

26, 2008 the plaintiff, a former employee of the Pennsylvania Department of Environmental Protection (DEP) initiated this lawsuit by filing a complaint in federal court. (Doc. 1) In this complaint, Bartos alleged, in part, that he was suspended by DEP in August 2007, and later terminated by that agency in December 2007, in retaliation for reporting alleged waste and wrongdoing in the agency. (Id.)

While Bartos was employed at DEP his subordinates included two individuals, Patricia Olenick and Donald Hagerich. As this litigation progressed, Olenick and Hagerich were identified by the defendants as potential witnesses, who possessed information pertinent to Bartos' termination from the agency and the issues set forth in Bartos' complaint against DEP. Accordingly, as part of the pre-trial discovery in this case, Bartos resolved to depose both Olenick and Hagerich.

Following the filing of this lawsuit, in January of 2009 Bartos secured employment with State Representative Todd Eachus, in the Pennsylvania House of Representatives, performing special projects at the direction of State Representative Robert Belfanti. Shortly after Bartos began work in Representative Eachus' office an ugly episode ensued. An anonymous letter was sent to Representative Eachus' office. That anonymous letter informed the Representative that Bartos had been disciplined for alleged misconduct while he was employed with DEP and attached a copy of a disciplinary letter that had been served on Bartos by DEP in December 2007.

In a case which involved claims by Bartos that he had subjected to acts of retaliation by DEP officials, the sudden, anonymous appearance of this DEP disciplinary letter at the office of his current employer had a potentially retaliatory aspect to it, and was a matter of immediate concern and relevance for the plaintiff. Thus, the genesis of this anonymous letter became a topic of testimony in discovery depositions, including the depositions of Bartos' former DEP subordinates, Olenick and Hagerich.

Hagerich was deposed on June 10, 2009. Olenick, in turn, was deposed on June 23, 2009. In both of their depositions, Olenick and Hagerich were asked a series of questions regarding their knowledge of this anonymous letter and whether they had played any role in its preparation or surreptitious delivery to Bartos' current employer. In response to this series of direct questions, Olenick and Hagerich repeatedly and explicitly denied under oath playing any role in the delivery of the letter, and disclaimed any knowledge of the letter.

These sworn statements are now acknowledged to have been lies. This deceit by these deponents did not come to light through some immediate and wholly voluntary disclosure by the witnesses. Quite the contrary, the sworn, but false, testimony of these witnesses remained uncorrected for three months, until September 2009.

The events which led to disclosure of this deceit began in September 2009, when Bartos noticed a deposition of the chief of the Appeals Division of the State Civil Service Commission for September 30, 2009. Bartos noticed this deposition because the plaintiff had determined that the disciplinary letter that was anonymously leaked to Representative Eachus had come from the Commission's files, and Bartos intended through the deposition to confirm how that letter made its way from these files to become an attachment on an anonymous letter.

In preparation for this defending this deposition, counsel for DEP met with the proposed deponent on or about September 17, 2009. At that time defense counsel received information which indicated that Olenick and Hagerich had retrieved the anonymous letter from state files shortly before it was delivered, raising the clear inference that they had also participated in the submission of the anonymous letter, something they had repeatedly denied under oath in June, 2009.

Defense counsel acted promptly after learning this disturbing information, and by September 24, 2009 the defendants caused errata sheets to be filed by Olenick and Hagerich, errata sheets that attested to material and troubling changes in the sworn testimony of these two witnesses. Thus, for deponent Donald Hagerich, the proposed alterations in his prior sworn testimony regarding the provenance of the anonymous letter were profound, and completely altered the meaning of his prior testimony.

These material changes are illustrated by following excerpt from that testimony where the original sworn answers are displayed in bold and the proposed errata are shown in italics:

> Q: Yes. Have you seen Page 1 of this exhibit before?
> A: *I participated in its creation*. **In a newspaper article.**
>
> Q: I'm not asking you about the allegations contained in this. I'm asking you if you've ever seen this piece of paper before.
> A: **No**. *Yes*
>
> Q: Did you play a role in the preparation of this letter?
> A: **No**. *Yes*
>
> Q: Are you aware of anybody at DEP who played a role in the preparation of this letter?
> A: **Nope**. *Yes*
>
> Q: Are you aware of anybody who has played a role in the preparation of this letter?
> A: **Nope**. *Yes*
>
> Q: I want to turn your attention to Page 2. Have you seen Page 2 before today?
> A; **No**. *Yes*
>
> Q: I want to turn your attention to Page 3 of this exhibit. Have you seen this page before today?
> A: **No**. *Yes*
>
> Q: I want you to turn to the last page of this exhibit. .... Did you prepare this envelope?
> A : This paper?
> Q: The envelope.
>
> MR. GOLDBERG: This is a photocopy of an envelope.

A: Oh.

BY MR. CLARK:
Q: Did you prepare the envelope?
A:  **No**. *Yes*

Q: Did you play a role in the preparation of the envelope?
A:  **No**. *Yes*

Q: Have you ever been in the offices of the State Civil Service Commission?
A: Yes
.
Q: When?
A: I probably started going there in 1978.

Q: When is the last time you were in their offices?
A: I don't recall. It's been quite awhile.

Q: Was it more than a year ago?
A: Yes.

Q: Was it more than two years ago?
A:  **Yes**. *No*

Q: Have you been to the State Civil Service Commission offices to obtain a photocopy of the discharge letter that was issued to Mr. Bartos?
A:  **No**. *Yes*

Q: Did you accompany anybody who went to the State Civil Service Commission offices in order to obtain a copy of the discharge letter of Mr. Bartos?
A:  **No**. *Yes*

Q: Did you accompany anybody who was at the State Civil Service Commission offices for the purpose of reviewing Mr. Bartos's Civil Service Commission file?

A: **No**. *Yes*

Similarly the proposed errata sheet submitted by Patricia Olenick revealed her prior sworn testimony on the issue of the genesis of this anonymous letter to be a fabric of lies, as illustrated by the following excerpt from that testimony where the original sworn answers are displayed in bold and the proposed errata are shown in italics:

> Q: Turn to page two of this exhibit. Actually, pages two and three. I'll represent to you this is the discharge letter Mr. Bartos received in December of 2007. Did you see this letter before today?
> A: **No.** *Yes*
>
> Q: Did you obtain a copy of this letter from the State Civil Service Commission?
> A: **No**. *Yes*
>
> Q: Did you accompany anybody who obtained a copy of this letter from the State Civil Service Commission?
> A: **No.** *Yes*
>
> Q: Did you accompany anybody who reviewed the State Civil Service Commission records –
> A: **No.** *Yes*
>
> Q: I didn't finish my question. Did you accompany anybody who reviewed the State Civil Service Commission records pertaining to Steve Bartos?
> A: **No**. *Yes*
>
> Q: Have you made a request for any information from Steve Bartos' Civil Service Commission file?
> A: **No**. *Yes*

Confronted with this belated acknowledgment of a significant pattern of calculated falsehoods by these two witnesses, Bartos moved to strike the errata sheets, and also moved for sanctions. The Court authorized discovery to allow the parties to get to the truth behind these lies, and permitted briefing on the issue of whether this misconduct permitted the Court to strike these errata sheets.

This matter has been fully briefed by the parties, and the witnesses, (Docs. 41, 42, 46, 77, 79, 82, and 85) and is now ripe for resolution. For the reasons set forth below, the Motion to Strike Errata Sheets will be granted.

## II. **DISCUSSION**

Bartos' Motion to Strike calls upon the Court to exercise its authority under the Federal Rules of Civil Procedure to regulate various aspects of discovery in this case. Issues relating to these discovery matters rest in the sound discretion of the Court. *See Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987). A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983).

That discretion is guided, however, by certain basic principles. In this instance, that discretion is cabined by Rule 30(e) of the Federal Rules of Civil Procedure

which governs corrections of errata in depositions, and provides in pertinent part as follows:

> **(e) Review by the Witness; Changes.**
>
> **(1)** *Review; Statement of Changes.* On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
> **(A)** to review the transcript or recording; and **(B)** if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

F. R.Civ. P. Rule 30(e).

There are two components to this rule, which govern both the procedure and substance of this process of correcting depositions through errata. First, as a procedural matter, the rule prescribes time limits for corrections, noting that a deponent is permitted only "30 days after being notified by the officer that the transcript or recording is available in which: **(A)** to review the transcript or recording; and **(B)** if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Id.

Courts frequently construe these procedural requirements strictly. As one court has observed:

> Although courts are split over whether to allow substantive changes to a deposition, there is no debate that the procedural requirements of Rule 30(e) must be adhered to. "Under the plain language of Rule 30(e)

therefore, the deponent or party must request review of the deposition before its completion." *Rios v. Bigler,* 67 F.3d 1543, 1551 (10th Cir.1995). Rule 30(e) also references Rule 30(f)(1). " Rule 30(f)(1) specifies that the certificate where such request is noted 'shall' accompany the deposition and be filed with the deposition or sent to the attorney who arranged for the transcript or recording." *Id.* Therefore, . . . to make a substantive change to his deposition, a party . . . must request review of his deposition before its completion, and the officer conducting the deposition must note the request on a certificate, which " 'shall be in writing and accompany the record of the deposition.' " *Id.* at 1552 (quoting Fed.R.Civ.P. 30(f)(1)). "If the party or deponent properly requests review, the party or deponent may submit changes to his deposition within [30] days after being notified by the officer that the transcript is available for review." *Id.*

*Agrizap, Inc. v. Woodstream Corp*. 232 F.R.D. 491, 493 (E.D.Pa. 2006).

Strictly adhering to these procedural time limits, court have frequently rebuffed belated efforts by deponents to change their deposition testimony, particularly when those changes are both tardy and clearly substantive. *See, e.g., Hambleton Brothers Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1224 (9th Cir. 2005)(denying belated errata); *Gilmore v. Macy's Retail Holdings*, No. 06-3020, 2009 WL 140518 (D.N.J. Jan. 20, 2009)(same); *Agrizap, Inc. v. Woodstream Corp*. 232 F.R.D. 491, 493 (E.D.Pa. 2006)(same). *Blackthorne v. Posner,* 883 F.Supp. 1443, 1454 n. 16 (D.Or.1995) (excluding untimely deposition corrections); *Workman v. Chinchinian,* 807 F.Supp. 634, 644-45 (E.D.Wash.1992) (same); *see also Rios v. Bigler,* 67 F.3d 1543, 1552-53 (10th Cir.1995) (excluding corrections in part because the record did

not show the plaintiff's corrections were submitted within the "mandatory thirty day period"). *But see, Titanium Metals Corp. v. Elkem Management Inc.*, 191 F.R.D. 468 (W.D. Pa. 1998)(permitting correction of math errors in deposition 47 days after deposition submitted).

Beyond these time limits, there are substantive standards governing the type of corrections which may be permitted through errata sheets. In some respects, these substantive standards are in flux. Thus:

> Courts have diverged over whether the rule permits a deponent to change the substantive content of his or her testimony or whether it contemplates only ministerial changes to the transcript. *See, e.g., Agrizap, Inc. v. Woodstream Corp.,* 232 F.R.D. 491, 493 n. 2 (E.D.Pa.2006) (collecting cases that both permit and prohibit witnesses from changing material deposition testimony under Rule 30(e)). Despite this split of authority, district courts within the Third Circuit -like the majority of tribunals to have addressed Rule 30(e)-generally permit deponents to amend the content of their testimony. *See Towers v. Heidelberger Druckmaschinen Aktiengesellschaft,* No. 3:CV-06-700, 2007 WL 1238569, *2 (M.D.Pa. Apr. 26, 2007) (permitting deponent to alter substance of his deposition (citing *Podel v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 103 (2d Cir.1997)); *see also Buzoiu v. Risk Mgmt. Alternatives, Inc.,* No. Civ.A. 03-3579, 2004 WL 1427147, at *1 (E.D. Pa. June 24, 2004); *Titanium Metals Corp. v. Elkem Mgmt., Inc.,* 191 F.R.D. 468, 472 (W.D.Pa.1998); *Turchan v. Bailey Meter Co.,* 21 F.R.D. 232, 233 (D.Del.1957); *accord* 8A Charles Alan Wright et al., Federal Practice and Procedure § 2118 (2d ed.1994).

*In re Chocolate Confectionary Antitrust Litigation*, No. 08-MDL-1935, 2009 WL 2045160, 2 (M.D.Pa.. July 9, 2009).

However, even those cases that adopt a more permissive approach and allow some substantive changes in depositions through errata sheets recognize that there are limits on the type of revisions that can properly be made through an errata sheet.

> While courts typically look askance at attempts to retract damaging admissions unearthed during testimony, they often permit deponents to elucidate testimony or to supply additional information necessary to bring context to deposition responses. *Compare, e.g., Donald M. Durkin Contracting, Inc. v. City of Newark,* No. CIVA 04-163, 2006 WL 2724882, at *5 (D.Del. Sept. 22, 2006) (suppressing errata sheets that amended key testimony to advance alternative defenses not discussed during the deposition); *with Pa. Dep't of Envtl. Prot. v. Allegheny Energy, Inc.,* No. Civ.A. 05-885, 2008 WL 4960100, at *27-28 (Sept. 2, 2008) (recommendation of magistrate judge) (declining to suppress errata sheets that clarified the deponent's deposition testimony), *recommendation adopted in part and modified in part on other grounds by* 2008 WL 4960090 (W.D.Pa. Nov. 18, 2008).

*Id.*

When defining the line between substantive changes in depositions which are permitted by errata, and those which are proscribed, courts have relied upon different formulations to express a common theme. This theme turns on the distinction between "explanatory" errata, which are permitted, and "contradictory" errata, which are viewed as a nullity. 7, *Moore's Federal Practice 3d*, §30.60[3], at 30-108 (2009 ed.).Thus, it has been said that "the purpose of an errata sheet is to *correct alleged inaccuracies* in what the deponent *said* at his deposition, not to modify what the deponent said for tactical reasons or to reflect what he wishes that he had said. *See,*

*e.g., Hambleton Bros. Lumber Co. v. Balkin Enters.,* 397 F.3d 1217, 1225 (9th Cir.2005) (citations omitted).*" Crowe v. Marchand*, No.05-98T, 2006 WL 5230014, *1 (D.R.I. 2006)(emphasis in original). Similarly, in construing Rule 30(e) courts have been mindful that "[t]he Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination." *Burns v. Board of County Com'rs of Jackson County,* 330 F.3d 1275, 1282 (10th Cir. 2003)(citations omitted). *See also*, *Garcia v. Pueblo Country Club,* 299 F.3d 1233 (10th Cir.2002), *Greenway v. Int'l Paper Co.,* 144 F.R.D. 322, 325 (W.D.La.1992).

Adopting this approach, courts have treated deposition errata as affidavits, and have examined proposed errata to depositions using the same test that applies when defining a "sham affidavit", an affidavit which is tactically drafted to avoid a result compelled by law on otherwise undisputed facts. *See, e.g.*, *In re Chocolate Confectionary Antitrust Litigation*, *supra*; *Donald M. Durkin Contracting, Inc.v. City of Newark*, No. 04-163, 2006 WL 2724882 (D. Del. Sept. 22, 2006). Applying this "sham affidavit" test to motions to strike deposition errata:

> Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during her earlier testimony, whether the

affiant had access to the pertinent evidence at the time of her earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain. *Franks,* 796 F.2d at 1237 (citing *Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1364-65 (8th Cir.1983); *Perma Research & Dev. Co. v. The Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969)).

*Donald M. Durkin Contracting, Inc. v. City of Newark* 2006 WL 2724882, *4 (D.Del 2006).

Applying these legal benchmarks to the facts presented here, it is apparent that the errata sheets tendered by Olenick and Hagerich run afoul of both the procedural and the substantive standards that govern such corrections. First, as a procedural matter, it is evident that the proposed errata are wholly untimely. These errata were tendered months after the depositions were taken, and long after the 30-day period prescribed by Rule 30(e) for corrections had elapsed. Therefore, Bartos is justified in seeking the exclusion of these errata sheets solely on grounds of untimeliness. *See e.g., Hambleton Brothers Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1224 (9th Cir. 2005)(denying belated errata); *Gilmore v. Macy's Retail Holdings*, No. 06-3020, 2009 WL 140518 (D.N.J. Jan. 20, 2009)(same); *Agrizap, Inc. v. Woodstream Corp.* 232 F.R.D. 491, 493 (E.D.Pa. 2006)(same). *Blackthorne v. Posner,* 883 F.Supp. 1443, 1454 n. 16 (D.Or.1995) (excluding untimely deposition corrections); *Workman v. Chinchinian,* 807 F.Supp. 634, 644-45 (E.D.Wash.1992)

14

(same); *see also Rios v. Bigler,* 67 F.3d 1543, 1552-53 (10th Cir.1995).

Olenick and Hagerich cannot seek to excuse these tardy corrections on the grounds that they were merely attempting to address inadvertent errors in their original testimony. *Titanium Metals Corp. v. Elkem Management Inc.*, 191 F.R.D. 468 (W.D. Pa. 1998)(permitting correction of math errors in deposition 47 days after deposition submitted). Quite the contrary, it is apparent that the delay here was a product of calculation, rather than inadvertence, and reflected a deliberate effort by these witnesses to adhere to a lie, until that lie collapsed around them. In this regard, application of the standards applied to sham affidavits leads to a telling result here.

At the outset, looking to the first of these substantive standards-whether the witnesses had the opportunity to be cross-examined during their earlier testimony and clarify their misstatements–in this case the witnesses, who were state employees, were represented by counsel for the defendant state officials, who had a contemporaneous opportunity to clarify this issue at the original deposition.[1] The fact that defense counsel did not clarify this issue immediately is not a result of any dereliction by

---

[1] At the time of the depositions, we understand that defense counsel had no reason to believe that the interests of the witnesses and the Commonwealth might diverge because counsel was unaware that the witnesses were involved in the generation of the anonymous letter, but planned to testify falsely. Once the belated errata sheets identified and crystallized this conflict, separate counsel assumed responsibility for representing Olenick and Hagerich.

15

counsel. Rather, it appears to be a function of the fact that these witnesses initially elected to mislead both Bartos and counsel for the defendants regarding their involvement in this shabby episode. Thus, this factor weighs heavily in favor of striking the errata sheet.

The second factor to be considered by the Court-whether the witnesses had access to the pertinent evidence at the time of their earlier testimony–also weighs heavily against Olenick and Hagerich. The evidence that was discussed in the deposition of these two witnesses was an anonymous letter that the witnesses had secretly created. The witnesses undeniably had access to the pertinent evidence at the time of their earlier testimony–indeed, they had manufactured that evidence. Therefore, they cannot be said to have been surprised by the existence of this evidence when they were deposed, since this evidence only existed because of their calculated efforts to secretly create and transmit this document to Bartos' current employer.

Nor can Olenick and Hagerich find any comfort in the third factor to be considered here-whether the errata sheet was based on newly discovered evidence. The errata sheets tendered by Olenick and Hagerich admit to a series of calculated falsehoods in their June 2009 depositions. Those deliberate deceits concerned the witnesses' roles in creating and mailing an anonymous letter to Bartos' employer in

February 2009. Nothing about the facts surrounding this tawdry exercise was new to Olenick and Hagerich when they testified falsely, and the only new evidence that existed in September 2009, when these errata were belatedly tendered to the court, was the "fact" that the witnesses had been caught in the web of deceit which they had cast months earlier.

Finally, Olenick and Hagerich can find no solace in the final factor commended for our consideration-whether the earlier testimony merely reflects confusion which the errata attempts to explain. Simply put, there was no confusion on the part of these witnesses went they testified in June 2009. They knew what they had done with respect to the anonymous letter, and chose to testify falsely about that conduct in a calculated fashion until they were caught.

In short, the errata sheets tendered here are improper, both because they are untimely, and because they attempt to do something that deponents are not permitted to do through errata sheets–they treat the sworn testimony of these witnesses as "a take home examination" which can be altered for tactical reasons or to reflect what the witnesses wish that they had said.

The Motion to Strike will be granted.

## III. **CONCLUSION**

Accordingly, for the foregoing reasons Bartos' Motion to Strike Errata Sheets (Doc. 41) is GRANTED.

So ordered this 23d day of April, 2010.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
