IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEPHEN D. BARTOS,** | : | |
| | : | |
| Plaintiff | : | Civil Action No. 1:08-cv-00366 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION; KATHLEEN A. MCGINTY,** in her individual and official capacity; **PATRICK MCDONNELL,** in his individual and official capacity; and **KENNETH R. REISINGER,** in his individual and official capacity, | : : : : : : : : : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

Before the Court is Defendants' motion for reconsideration of the Court's June 16, 2011 order adopting the Report and Recommendation of Magistrate Judge Carlson, and granting in part and denying in part Defendants' motion for summary judgment. (Doc. No. 125.) For the reasons that follow, the Court will deny Defendants' motion.

**I.   BACKGROUND**

On February 26, 2008, Plaintiff Stephen D. Bartos filed a complaint alleging that he was terminated from his employment with the Commonwealth of Pennsylvania for improper reasons. (Doc. No. 1.) Bartos brought three claims under the civil rights statute, 42 U.S.C. § 1983, including one claim against Defendants Reisinger, McDonnell and McGinty, alleging that his discipline and termination was in retaliation against him for engaging in petitioning activity protected by the First Amendment. Bartos also brought claims under 42 U.S.C. § 1985(3), the

1

Fair Labor Standards Act, 29 U.S.C. § 201, and Pennsylvania's whistle-blower statute, 43 Pa.C.S. § 1423, et seq.

In his complaint, Bartos alleges that he worked for the Pennsylvania Department of Environmental Protection (DEP), and its predecessor agency the Department of Environmental Resources, from 1987 until 1990, and again from 1997 until 2007.  In August of 2006, Bartos served as an Environmental Group Manager, where he was responsible for, inter alia, development, oversight, and general management of the Cleanup Our Anthracite Lands and Streams (COALS) program.  Bartos served as a liaison between the COALS program and a non-profit organization, Keep Pennsylvania Beautiful (KPB), and was designated as proxy for DEP at KPB board meetings.

At the time of the events in this lawsuit, the Municipal Waste Planning, Recycling and Waste Reduction Act, Act of July 28, 1988, 53 P.S. § 4000.101 et seq. ("the Act"), mandated recycling in certain Pennsylvania municipalities, required counties to develop municipal waste management plans, and provided grants to offset some local government recycling expenses.  Section 902 of the Act provided for grants to municipalities for development of municipal recycling programs (hereinafter "Section 902 Grants"), which were issued through grant contracts with DEP.  (Doc. No. 118-2 ¶¶ 13-19.)  After being designated as DEP's proxy to the KPB board, Bartos began reviewing and auditing DEP's Section 902 Grants to municipalities.  (Id. ¶¶ 28-29.)  Bartos found that KPB received funds from Section 902 Grants by way of pass-through funding, in other words, earmarking from recipients of the grants.  (Id. ¶¶ 30-31.)

In early 2007, Bartos communicated his findings to the Bureau Director of Waste Management, Defendant Kenneth Reisinger, who supervised Bartos' immediate supervisor,

2

Stephen Socash. (Id. ¶¶ 9, 39-48.) Bartos' findings conflicted with the views of Lawrence Holley, then Chief of the Division of Waste Minimization and Recycling, with whom Bartos allegedly had professional conflicts. (Id.) Bartos conducted an audit, and prepared a 360 page report (hereinafter "Audit Report"), in which he reported that Section 902 Grants budgeted to KPB were being spent for purposes not reasonably related to a recycling program. (Doc. No. 110 ¶¶ 34-39.) The report was ultimately forwarded to Defendant McGinty, the Secretary of the DEP at the time, who suspended the funding process. (Id.)

Bartos alleges that, after communicating his findings to Reisinger, Reisinger began to harass him and to engage in retaliatory behavior against him. (Doc. No. 118-2 ¶ 62-66.) In June of 2007, Bartos was being considered for promotion to a position in DEP that was overseen by Reisinger, and which was held by Lawrence Holley. Reisinger alleges that Holley, who is African-American, approached him and reported that three DEP staff members had informed Holley that Bartos was using racial slurs towards Holley. (Doc. No. 110 ¶ 40.) Thereafter, Reisinger conducted a personnel investigation, which allegedly corroborated the allegations of racist remarks. (Id. ¶¶ 43-53.) After a pre-disciplinary conference, in which Bartos denied each of the allegations leveled against him, Reisinger recommended that Bartos be disciplined. (Id. ¶ 66.) On August 30, 2007, Bartos was suspended for "inappropriate workplace behavior." (Id.) Bartos contends that his suspension was because of his opposition to the pass-through funding to KPB, and that such a causal link was suggested by the manner in which Reisinger communicated the suspension to Bartos. (See id. ¶ 83-90.)

After serving his three-day suspension, Bartos challenged his suspension, filing an appeal with the State Civil Service Commission (SCSC) on September 14, 2007. (Doc. Nos. 110 ¶¶ 70-

71; 118-2 ¶ 89.)  In his appeal, Bartos alleged that his suspension was related to his whistle-blower status with respect to the Section 902 Grants and his Audit Report.  (Id.)  Thereafter, Reisinger instituted two additional disciplinary actions against Bartos, including a disciplinary conference on October 18, 2007, and another on December 4, 2007, leading to Bartos' termination from DEP.  (Doc. No. 118-2 ¶¶ 98-112.)  Bartos was informed that his termination was because of inappropriate workplace behavior, harassing and threatening co-workers, retaliating against co-workers and making inappropriate gender-based and sexual comments to and about co-workers.  (Doc. No. 110-5 at 27.)  Bartos alleges, however, that he was disciplined for appealing his suspension.  (See Doc. No. 118-2 ¶¶ 89-109.)

On October 7, 2010, following discovery,[1] Defendants moved for summary judgment on all of Bartos' claims.  (Doc. No. 109.)  Magistrate Judge Carlson recommended that summary judgment be entered in favor of Defendants on all claims except for Bartos' First Amendment retaliation claim against Defendant Reisinger, and his state whistle-blower claims against Defendants Reisinger and DEP.  (Doc. No. 122.)  Neither Plaintiff nor Defendant filed objections to Magistrate Judge Carlson's Report and Recommendations.  On June 16, 2011, the Court adopted the Report and Recommendation, and ordered that summary judgment be granted in part and denied in part.  (Doc. No. 123.)  In its order, the Court held, inter alia, that "[d]isputed issues of material fact preclude summary judgment on Bartos' First Amendment retaliation claim against Defendant Reisinger."  (Doc. No. 123.)  Defendants seek

---

[1] Discovery in this matter is marked by sanctions proceedings against two state-employee witnesses, Donald Hagerich and Patricia Olenick, who later admitted to lying under oath about their involvement in the transmission of an anonymous letter regarding Bartos' disciplinary proceedings to Bartos' employer.  (Doc. No. 88.)

reconsideration of the First Amendment claim, arguing that the Supreme Court's decision in Duryea v. Guarnieri, 131 S. Ct. 2488 (2011), "invalidates the law pertaining to the First Amendment referenced in the Report and Recommendation." (Doc. No. 125 ¶ 6.) Defendants also submit that Plaintiff's First Amendment claim should be dismissed, and that his state whistle-blower statute claim should be remanded to the Pennsylvania Commonwealth Court. (Id. ¶ 11.)

## II.    STANDARD OF REVIEW

A motion for reconsideration is a device of limited utility. Its purpose is to correct manifest errors of law or fact or to present newly discovered evidence. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, a party seeking reconsideration must demonstrate at least one of the following grounds prior to the court altering, or amending, a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). A motion for reconsideration is appropriate in instances where the court has "patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." Rohrbach v. AT & T Nassau Metals Corp., 902 F. Supp. 523, 527 (M.D. Pa. 1995), vacated in part on other grounds on reconsideration, 915 F. Supp. 712 (M.D. Pa. 1996) (citation omitted). It may not be used as a means to reargue unsuccessful theories, or argue new facts or issues that were not presented to the court in the context of the matter previously decided. Drysdale v.

Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995) (citation omitted).

### III.   DISCUSSION

In his complaint, Bartos alleges that his petitioning activity "is protected under the Petition Clause of the First Amendment of the U.S. Constitution," and that his "protected activity was a substantial factor motivating Named Defendants' decision to terminate his employment." (Doc. No. 1 ¶¶ 130-31.) Considering this claim at the motion for summary judgment stage, Magistrate Judge Carlson found that "Bartos' filing of a complaint with the civil service commission would be a constitutionally protected activity since '[i]t is undisputed that filing lawsuits and grievances under a collective bargaining agreement implicate the Petition Clause of the First Amendment.'" (Doc. No. 122 at 45) (quoting Brennan v. Norton, 350 F.3d 399, 417 (3d Cir. 2003) (citing San Filippo v. Bongiovanni, 30 F.3d 424, 434-35 (3d Cir. 1994))).

Defendants moved for reconsideration, alleging that the Supreme Court's recent decision in Duryea, which provides that a government employee's petition must relate to a matter of public concern to give rise to a Petition Clause claim under the First Amendment, presents a change in the law that was not available at the time that summary judgment was decided. (Doc. No. 126 at 4.) Furthermore, Defendants argue that Bartos' SCSC appeals were petitions regarding "employment decisions that solely affected [Bartos] personally," and did not address matters of public concern. (Doc. No. 126 at 6.)

In his brief in opposition to Defendants' motion for reconsideration, Bartos concedes

that Duryea presents a change in the law not available when the Court decided the summary judgment motion. (Doc. No. 130 at 2.) However, Bartos argues that the change in the law does not impact this case, because his Petition Clause claim raises a matter of public concern. (Id. at 3.) Bartos argues that his "petition met the applicable standard for raising an issue of public concern as it raised critical issues of government mismanagement." (Id.) Bartos claims that he raised "issues of waste and wrongdoing" in March of 2007, and that after receiving his three-day suspension, he challenged the suspension by filing an appeal to the SCSC. (Id. at 6-7.) Bartos argues that his September 14, 2007 appeal to the SCSC constitutes a petition, and that he described governmental misconduct in his SCSC appeal. He argues that these allegations, made in a venue that provides a public hearing, constitute matters of public concern and that his petition meets the requirements of Duryea. (Id. at 7-8.)

In their reply brief, Defendants argue that, while the issues presented in Bartos' Audit Report may raise matters of public concern, his SCSC appeals related only to his disciplinary suspension and termination, and thus were merely matters of private concern. (Doc. No. 131 at 1-2.) Defendants state that "[t]he fact that Plaintiff references his having submitted the Audit Report in his Civil Service complaints does not mean that he filed the complaints to address those issues." (Id. at 4) Defendants also point out that Bartos "neither claimed that his submission of the Audit report invoked protection under the Petition Clause, nor did he file a claim under the Speech Clause of the First Amendment premised on the statements made in his audit report." (Id.)

"[T]he Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." Duryea, 131 S. Ct. at

2494.  To make a <u>prima facie</u> claim of retaliation under the Petition Clause of the First Amendment, a plaintiff must show that: "(1) [he] was employed at a public agency in a position that does not require political affiliation, (2) [he] was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision." <u>Galli v. New Jersey Meadowlands Comm'n</u>, 490 F.3d 265, 271 (3d Cir. 2007); <u>Thomas v. Independence Twp.</u>, 463 F.3d 285, 296 (3d Cir. 2006).  Once the plaintiff meets this initial showing, the defendant employer may rebut the claim by showing, by a preponderance of evidence, that it would have taken the same action even in the absence of the protected conduct.  <u>Suppan v. Dadonna</u>, 203 F.3d 228, 235 (3d Cir. 2005).

A government employer's allegedly retaliatory actions against an employee do not give rise to liability under the Petition Clause unless the employee's petition relates to a matter of public concern.  <u>Duryea</u>, 131 S. Ct. at 2493.  Before the Supreme Court's recent decision in <u>Duryea</u>, the Third Circuit was the only circuit that held that the public concern test does not limit Petition Clause claims by public employees.  <u>Id.</u> at 2491-92.  The Supreme Court imported the "public concern" analysis from the Speech Clause of the First Amendment into the Petition Clause, explaining that "[i]f a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases."  <u>Id.</u> at 2500 (citing <u>San Diego v. Roe</u>, 543 U. S. 77, 82-83 (2004)).  Thus, as to the second prong of the <u>prima facie</u> case for a First Amendment retaliation claim under the Petition Clause, to show protected activity a government employee must show "that he or she spoke as a citizen on a matter of public concern."  <u>Id.</u>

The Supreme Court emphasized that "a citizen who accepts public employment 'must

accept certain limitations on his or her freedom.'" Id. at 2494 (citing Garcetti v. Cebalos, 547 U.S. 410, 418 (2006)). While government employees are entitled to participate as citizens in public discourse, the "[g]overnment must have authority, in appropriate circumstances, to restrain employees who use petitions to frustrate progress towards the ends they have been hired to achieve." Id. at 2495. The Supreme Court expressed concern about public employees who might "use the courts to pursue personal vendettas or to harass members of the general public," which could harm public confidence in the government, and morale in the workplace. Id.

In order to determine if a plaintiff's petition relates to a matter of public concern, courts must look to the "the content, form, and context of [the petition], as revealed by the whole record." Id. at 2501 (quoting Connick v. Myers, 461 U.S. 138, 147-48, 148 n.7 (1983)). Internal grievances filed with an employer often "will not seek to communicate to the public or to advance a political or social point of view beyond the employment context." Id. An internal grievance involving "'nothing more than a complaint about a change in the employee's own duties' does not relate to a matter of public concern and accordingly 'may give rise to discipline without imposing any special burden of justification on the government employer.'" Id. (quoting United States v. Treasury Employees, 513 U. S. 454, 466 (1995)). The rationale for characterizing between matters of public concern and matters of private concern is that, while the Petition Clause protects the "democratic process," it should not be used to "transform everyday employment disputes into matters for constitutional litigation in the federal courts." Id.

While the Supreme Court cautioned against the application of the Petition Clause to govern internal employment matters, such as "working conditions, pay, discipline, promotions, leave, vacations, and terminations," id. at 2496, government employees are protected by the First

Amendment from retaliation for speech or petition relating to matters of public concern.[2] Many internal grievances relate only to an employee's own rights and duties, however some internal grievances relate to matters of public concern.  Compare Roberts v. Ferman, No. 09-4895, 2011 WL 2937398 (E.D. Pa. July 20, 2011)  (finding that plaintiff's employment discrimination charges filed with the Pennsylvania Human Relations Commission were considered a petition addressing matters of public concern) with Emigh v. Steffee , No. 10-3522, 2011 WL 3289827, *5 (3d Cir. Aug. 2, 2011) (holding that internal grievances about disciplinary action stemming from alleged sexual misconduct did not relate to matters of public concern) (citing Duryea, 131 S. Ct. at 2501).

In the context of Speech Clause claims, the Third Circuit has consistently held that speech related to governmental misconduct involves matters of public concern.  Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001) ("A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other

---

[2] The Court emphasized that a suit under the Petition Clause is not proper where an employer retaliates against an employee for petitioning about an ordinary workplace grievance:

> Employees who sue under federal and state employment laws often benefit from generous and quite detailed anti retaliation provisions. See, e.g., Pa. Stat. Ann., Tit. 43, §1101.1201(a)(4) (Purdon 2009); §1101.1302. These statutory protections are subject to legislative revision and can be designed for the unique needs of State, local, or Federal Governments, as well as the special circumstances of particular governmental offices and agencies. The Petition Clause is not an instrument for public employees to circumvent these legislative enactments when pursuing claims based on ordinary workplace grievances.

Duryea, 131 S. Ct. at 2497.

concern to the community."); Feldman v. Phila. Hous. Auth., 43 F.3d 823, 829 (3d Cir. 1995) ("Disclosing corruption, fraud and illegality in a government agency is a matter of significant public concern."); Holder v. Allentown, 987 F.2d 188, 195 (3d Cir. 1993) ("The content of the speech may involve a matter of public concern if it attempts 'to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials.'"); O'Donnell v. Yanchulis, 875 F.2d 1059, 1061 (3d Cir. 1989) ("Needless to say, allegations of corrupt practices by government officials are of the utmost public concern.").

In this case, Bartos submitted an Audit Report in March 2007, in which he "raised issues of waste and wrongdoing," specifically that KPB was improperly receiving Section 902 Grants by way of pass-through funding, and that the funds were being spent for purposes not reasonably related to a recycling program. (Doc. No. 118-2 ¶¶ 49-68.) In August of 2007, Bartos was disciplined for "inappropriate workplace behavior," which he argues is a pretextual reason. (See id. ¶¶ 85-88.) On September 14, 2007, Bartos filed an appeal to the SCSC, alleging that his discipline was related to the Audit Report. (Doc. No. 130 at 7.) In his SCSC appeal, Bartos provided "a comprehensive description of his reports of waste and wrongdoing." (Id.) Thereafter, Bartos was terminated, allegedly for raising his allegations of government misconduct in his petition to the SCSC, "a venue that provided a public hearing," thus "airing embarrassing evidence that the wrongdoing was the result of Reisinger's mismanagement." (Id. at 7-8.)

Defendants argue that even if Bartos' Audit Report raised issues of public concern, his SCSC appeal was not filed to address those issues. (Doc. No. 131 at 4.) While it is true that Bartos' petition sought to overturn his discipline, which is a matter that related to Bartos'

personal employment, the petition nonetheless related to a matter of public concern. The primary allegation of the SCSC appeal was that Bartos was disciplined for having submitted the Audit Report. This petition is analogous to the petition filed in Roberts, where the plaintiff's petition with the Pennsylvania Human Relations Commission alleged that his discipline was related to his race. 2011 WL 2937398 at *13. In that case, the court explained that "[a]lthough Plaintiff's motivations for filing such a charge may have been grounded in his own private interest, expression highlighting unfair discrimination on the part of government officials is not devoid of public concern." Id.; see also Looney v. Town of Marlborough, No. 10-1068, 2011 WL 3290202, *13-14 (D. Conn. July 30, 2011) (where plaintiff spoke as a citizen on a matter of public concern, and defendant allegedly retaliated against him, the court held that his lawsuit related to the retaliation was a petition involving a matter of public concern).

  Here, in his SCSC appeal, Bartos alleged that he was disciplined for reporting that Section 902 Grants were improperly funding KPB, thereby bringing to light wrongdoing on the part of the government. See Holder, 987 F.2d at 195 ("The content of the speech may involve a matter of public concern if it attempts 'to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials.'"). Such "allegations of corrupt practices by government officials are of the utmost public concern." O'Donnell, 875 F.2d at 1061. As the Supreme Court stated in Duryea, "the public has a right to the benefit of [public] employees' participation in petitioning activity. Petitions may 'allow the public airing of disputed facts' and 'promote the evolution of the law by supporting the development of legal theories.'" Duryea, 131 S. Ct. at 2500 (quoting BE & K Constr. Co. v. NLRB, 536 U. S. 516, 532 (2002)). Because Bartos' SCSC appeal accuses Defendant Reisinger of disciplining him for bringing to light

allegations of government wrongdoing, the Court finds that his petition relates to a matter of public concern.

### IV.     CONCLUSION

For the reasons explained above, the Court will deny Defendants' motion for reconsideration.  Because the Court will not dismiss Bartos' First Amendment retaliation claim, it will retain jurisdiction over his state whistle-blower statute claim.  An order consistent with this memorandum will follow.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEPHEN D. BARTOS,** | : | |
| | : | |
| Plaintiff | : | Civil Action No. 1:08-cv-00366 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION; KATHLEEN A. MCGINTY,** in her individual and official capacity; **PATRICK MCDONNELL,** in his individual and official capacity; and **KENNETH R. REISINGER,** in his individual and official capacity, | : | |
| | : | |
| **Defendants** | : | |

## ORDER

**NOW**, on this 29th day of September, 2011, upon consideration of Defendants' motion for reconsideration, and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED** that Defendants' motion for reconsideration (Doc. No. 125) is **DENIED**.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania
