IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN D. BARTOS,<br>    Plaintiff | : | |
| | : | No. 1:08-cv-00366 |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF<br>PENNSYLVANIA, DEPARTMENT<br>OF ENVIRONMENTAL<br>PROTECTION, et al.,<br>    Defendants | :<br>:<br>:<br>:<br>: | (Chief Judge Kane) |

## MEMORANDUM ORDER

Before the Court are four motions in limine: three filed by Defendants (Doc. Nos. 146, 150, 153) and one filed by Plaintiff (Doc. No. 148). Defendants have also filed a fourth motion in limine (Doc. No. 165), to which Plaintiff has not yet responded and which the Court will address in a separate order. The Court will first address Defendants' motions, and will then address Plaintiff's motion.

**I.   BACKGROUND**

On February 26, 2008, Plaintiff Stephen D. Bartos filed a complaint alleging that he was terminated from his employment with the Commonwealth of Pennsylvania, Department of Environmental Protection (DEP) for improper reasons. After the parties took part in discovery, Defendant filed a motion for summary judgment, which the Court granted in part and denied in part. The Court found that material issues of fact existed as to Plaintiff's First Amendment petition claim, brought pursuant to 42 U.S.C. § 1983, and as to Plaintiff's Pennsylvania whistleblower claim, brought pursuant to 43 Pa.C.S. § 1423, et seq.

Plaintiff, who had worked for DEP in various roles since 1997, commenced his role as

1

Environmental Group Manager (EGM) on August 25, 2006.  In his role as EGM, Plaintiff served as DEP's proxy on the board of Keep Pennsylvania Beautiful (KPB), a non-profit corporation that facilitated anti-litter activities and programs.  Early in 2007, Plaintiff determined that KPB was being funded in part by DEP grants reserved for municipal recycling programs.  On February 28, 2007, Plaintiff completed a report on the KPB funding, which he turned over to Defendant Reisinger, his supervisor's supervisor.  The report was highly critical of the funding scheme.

Plaintiff alleges that, after communicating his findings to Defendant Reisinger, Mr. Reisinger began to harass him and to engage in retaliatory behavior against him.  In June of 2007, Plaintiff was being considered for promotion to a position in DEP that was overseen by Defendant Reisinger, and which was held by Lawrence Holley.  Defendant Reisinger asserts that Mr. Holley, who is African-American, approached him and reported that several DEP staff members had informed Mr. Holley that Plaintiff was using racial slurs towards him.  Thereafter, Defendant Reisinger conducted a personnel investigation, which allegedly corroborated the allegations of racist remarks.  Specifically, Patricia Olenick, Donald Hagerich, Mark Voterro, and Todd Miller reported that Plaintiff used racial slurs.  After a pre-disciplinary conference, in which Plaintiff denied each of the allegations leveled against him, Defendant Reisinger recommended that Plaintiff be disciplined.  On August 30, 2007, Plaintiff was suspended for "inappropriate workplace behavior."  Plaintiff contends that his suspension was because of his opposition to the KPB funding scheme, and that such a causal link was suggested by the manner in which Defendant Reisinger communicated the suspension to Plaintiff.

After serving his three-day suspension, Plaintiff challenged his suspension, filing an

appeal with the State Civil Service Commission (SCSC) on September 14, 2007. In his appeal, Plaintiff alleged that his suspension was related to his whistleblower status with respect to the KPB funding scheme. Thereafter, Defendant Reisinger instituted two additional disciplinary actions against Plaintiff, including a disciplinary conference on October 18, 2007, and another on December 4, 2007, leading to Plaintiff's termination from DEP. Plaintiff was informed that his termination was because of objectionable workplace behavior, harassing and threatening co-workers, retaliating against co-workers and making objectionable gender-based and sexual comments to and about co-workers. Plaintiff alleges, however, that he was disciplined for appealing his suspension.

After filing this lawsuit, in January 2009, Plaintiff commenced employment with State Representative Todd Eachus, in the Pennsylvania House of Representatives. Shortly after he commenced his employment, an anonymous letter was sent to Representative Eachus's office, informing him of Plaintiff's discipline at DEP. During the June 2009 depositions of Plaintiff's former subordinates at DEP, Patricia Olenick and Donald Hagerich, the witnesses stated that they were not involved with the transmission of the anonymous letter. In September 2009, defense counsel learned that Ms. Olenick and Mr. Hagerich had sent the anonymous letter along with Mark Vottero. Defense counsel immediately caused errata sheets to be filed by Ms. Olenick and Mr. Hagerich. Subsequent depositions revealed that Ms. Olenick, Mr. Hagerich, and Mr. Vottero had agreed to lie if they were ever questioned about the anonymous letter.

## II. DEFENDANTS' MOTIONS

### A. Defendants' Motion to Preclude Reference to Defense Counsel's Representation of Perjured Witnesses at Deposition (Doc. No. 146)

Defendants moved to preclude reference to the fact that Attorney Joseph Goldberg of the

law firm Weber Gallagher Simpson Stapleton Fires & Newby LLP represented Ms. Olenick and Mr. Hagerich at their initial depositions. (Doc. No. 146.) Defendants argue that such evidence should not be admitted because it is irrelevant. (Id. at 5.) In the alternative, Defendants argue that even if the Court finds that the information is relevant, its probative value is outweighed by the prejudicial effect that the information could have. (Doc. No. 5.) In response, Plaintiff filed a brief, arguing that a motion excluding reference to Mr. Goldberg's representation of the witnesses should be narrowly crafted, because such information may be relevant or probative if, for example, Plaintiff's counsel attempts to assert a privilege as to a communication that either made in his presence. (Doc. No. 169.) The Court agrees with Defendants that the evidence should be excluded.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "All relevant evidence is admissible." Fed. R. Evid. 402. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403.    Here, Mr. Goldberg promptly remedied the witnesses' perjury upon learning of it. The fact that Mr. Goldberg represented Ms. Olenick and Mr. Hagerich is not relevant to any issues to be decided at trial. To the extent that defense counsel attempts to assert a privilege in the form of an objection, such an objection can be made and responded to without reference to the fact that Mr. Goldberg represented the perjured witnesses at their initial depositions. Thus, the Court will grant Defendants' motion to preclude evidence regarding Mr. Goldberg's representation of Ms. Olenick and Mr. Hagerich. (Doc. No.

147.)

### B. Defendants' Motion to Preclude Introduction of Evidence Related to Discipline of Other DEP Employees (Doc. No. 150)

Defendants moved to preclude introduction of evidence related to the discipline of other DEP employees who violated workplace policies. (Doc. No. 150.) In his complaint, Plaintiff alleges that he was suspended for authoring his report about the KPB funding scheme and ultimately terminated in retaliation for his SCSC appeal of the suspension. Defendants assert that Plaintiff was suspended for using racially objectionable language and was terminated for violating workplace policies, including harassing and threatening co-workers, retaliating against co-workers, and making objectionable gender-based and sexual comments to and about co-workers. At trial, one of the issues for the jury to decide is whether the reasons cited by Defendants for Plaintiff's discipline were pretextual. To support his argument that the reasons cited by Defendants were pretextual, Plaintiff seeks to introduce evidence relating to the discipline of other DEP employees found to have violated workplace policies. Specifically, Plaintiff seeks to introduce: (1) a document identifying other employees who were disciplined as a result of violating DEP policy; (2) two letters related to the discipline of William D., an air quality specialist who was issued a warning for touching his genitalia in the workplace; and (3) documentation related to the discipline of Joseph K., a solid waste manager who was issued a warning for engaging in conduct of a sexual and offensive nature with a female trainee in his chain of command.

Defendants seek to preclude Plaintiff from introducing evidence and exhibits relating to the discipline of DEP employees other than Plaintiff. Defendants argue that the evidence that Plaintiff seeks to introduce is not relevant because Defendant Reisinger had nothing to do with

5

the discipline of these other employees, the employees were disciplined years before Plaintiff's discipline, and the employees' actions were wholly different from Plaintiff's actions. (Doc. No. 151 at 5.) In the alternative, Defendants argue that even if the evidence is relevant, it would cause undue delay and present cumulative and collateral evidence. Introduction of the evidence, Defendants argue, would require several additional witnesses and would create tangential issues that would waste judicial resources. (Id. at 5-7.)

In an employment discrimination or retaliation case, a plaintiff may support an argument that an illegitimate factor was a motivating or determinative cause of an adverse employment decision by showing that the employer had treated "similarly situated persons not of his protected class more favorably." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). "[W]hile 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in 'all relevant respects.'" Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222-23 (3d Cir. 2009) (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)). The factors relevant to determining whether the plaintiff and the other employees are "similarly situated" depends on the unique facts of each case, "but often includes a 'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" Id. at 223 (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)). It is within the district court's discretion to determine whether evidence of an employer's treatment of other employees is relevant. Id.

Here, the reasons cited by Defendants for disciplining Plaintiff include using racially objectionable language, harassing and threatening co-workers, retaliating against co-workers,

and making objectionable gender-based and sexual comments to and about co-workers.  Plaintiff argues that evidence relating to the discipline of Joseph K. and William D. is relevant because these two employees were given substantially lesser penalties for their misconduct.  However, the evidence about the discipline of the other DEP employees that Plaintiff has offered is not relevant because the other employees are not "similarly situated."  First, and perhaps most significantly, Plaintiff has not alleged that either Joseph K. or William D. were supervised by Defendant Reisinger.  Second, neither Joseph K. or William D. engaged in the same type of conduct of which Plaintiff was accused: William D.'s misconduct involved his act of touching his genitalia in the presence of co-workers, and Joseph K.'s misconduct involved conduct and conversations of a sexual and offensive nature with a subordinate.  While Plaintiff was accused of making gender-based and sexual comments, he was also found to have made racially objectionable comments, and to have harassed, threatened, and retaliated against co-workers.  Plaintiff, unlike the other DEP employees, was disciplined pursuant to DEP's Workplace Violence Prevention Policy and Non-Discrimination Policy.  Further, neither Joseph K. or William D.'s misconduct occurred in the same period as Plaintiff's alleged misconduct: William D.'s misconduct occurred between 1989 and 1991, more than a decade before Plaintiff's alleged misconduct occurred, and Joseph K.'s misconduct occurred in 2003, four years before Plaintiff's alleged misconduct.  Plaintiff has put forth no facts to support a finding that there are sufficient similarities such that evidence of disparate discipline would make Plaintiff's claim of pretext more likely.  Thus, the Court finds that the evidence is not relevant and will grant Defendants' motion to preclude introduction of evidence related to the discipline of Joseph K. or William D.  The Court will not, however, grant Defendants' motion to the extent that it seeks to exclude the

entire category of evidence of other DEP employees' discipline. To the extent that Plaintiff can present evidence of the discipline of other similarly situated DEP employees, such evidence would be relevant.

> **C.  Defendants' Motion to Preclude Reference to False Testimony by Donald Hagerich or Patricia Olenick (Doc. No. 152)**

Defendants moved to preclude reference to the false testimony provided by Ms. Olenick and Mr. Hagerich, including the sanctions entered against them. (Doc. No. 152.) Defendants argue that evidence regarding the false testimony of Ms. Olenick and Mr. Hagerich, even if it is relevant to the issue of whether they provided false reports to Defendant Reisinger and the Bureau of Human Resources, is not relevant to any of Plaintiff's claims because the issue in this case is whether Defendant Reisinger reasonably believed the allegations against Plaintiff, not whether the allegations were true. (Doc. No. 153 at 3-7.) Defendants assert that even if Ms. Olenick and Mr. Hagerich were providing false information about Plaintiff's use of racial slurs, threats, and intimidation, Defendant Reisinger would have no reason to know this, especially because much of what they told him was confirmed by Mr. Vottero, Mr. Holley, and Mr. Miller. Further, Defendants argue that these witnesses provided false testimony about their involvement with the anonymous letters because they were afraid of Plaintiff. Additionally, Defendants argue that because they will not call Ms. Olenick or Mr. Hagerich as witnesses, their untruthfulness does not need to be exposed to the jury for impeachment purposes. In the alternative, Defendants argue that, even if it is relevant, evidence relating to Ms. Olenick and Mr. Hagerich's perjury should be excluded because it is unnecessary and has the potential to prejudice Defendants' case, confuse the issues, and waste time.

In his brief in response, Plaintiff argues that the false deposition testimony from Ms.

Olenick and Mr. Hagerich is relevant to show the antipathy that each bore against Plaintiff, thereby raising questions as to Defendants' good faith and wisdom in relying on information from them in disciplining Plaintiff. (Doc. No. 171 at 4.) However, Plaintiff has not argued that Defendant Reisinger had any reason to believe that these witnesses bore any antipathy against Plaintiff. Further, Defendants relied on statements from witnesses other than Ms. Olenick and Mr. Hagerich before taking disciplinary action against Plaintiff. Evidence about Ms. Olenick and Mr. Hagerich's perjury would require the admission of several exhibits, extra witnesses, and open the door to a number of tangential issues that are not material to this civil action. Additionally, there is a serious risk that the jury would improperly attribute the conduct of these two DEP employees to Defendants. Assuming arguendo that the evidence of Ms. Olenick and Mr. Hagerich's perjury is relevant, the probative value of such evidence is substantially outweighed by a danger of unfair prejudice against Defendants, confusing the issues, misleading the jury, undue delay, wasting time, and needlessly presenting cumulative evidence. See Fed. R. Evid. 403. Therefore, the Court will grant Defendants' motion, and preclude Plaintiff from introducing any evidence or reference to the false testimony of Patricia Olenick or Donald Hagerich.

### III.   PLAINTIFF'S MOTION (DOC. NO. 148)

Plaintiff filed one motion in limine, seeking to exclude three categories of evidence, including evidence of his filing a petition in bankruptcy, evidence regarding his termination from another position, and evidence regarding his offensive conduct or misbehavior not expressly referenced in disciplinary letters. (Doc. No. 148.) Defendants have filed a response, in which they assert that they do not intend to introduce evidence related to Plaintiff's filing for

bankruptcy, or his termination from employment subsequent to his employment with DEP. (Doc. No. 167.) Thus, the Court will deny this portion of Plaintiff's motion as moot. Regarding the evidence related to Plaintiff's offensive conduct or misbehavior, the Court will grant the motion in part.

Plaintiff argues that evidence extraneous to the specific content of the DEP suspension and termination letters should be excluded. Specifically, Plaintiff states that several DEP witnesses have alleged that Plaintiff made them or others uncomfortable or afraid. (Doc. No. 148 at 9-10.) Plaintiff seeks to exclude accusations against him, including but not limited to: (1) allegations that Mr. Hagerich was afraid of Plaintiff during his deposition; (2) allegations that Ms. Olenick was afraid of Plaintiff and advised her family that if she suffered physical harm that Plaintiff should be considered a suspect, and she contacted the police to alert them of her fears; (3) testimony from Mr. Vottero that he feared Plaintiff; (4) testimony from Mr. Miller regarding a billing issue that Plaintiff raised with a hotel clerk; and (5) allegations that Mr. Holley was afraid of Plaintiff, and demanded security or law enforcement be present for his deposition. (Id. at 10 n.4.) Plaintiff argues that this category of evidence is not relevant. In the alternative, Plaintiff argues that the evidence will cause undue delay, waste of time, and would unfairly prejudice Plaintiff. Further, he argues that the evidence is improper character evidence.

A number of factual disputes exist in this case. With respect to the Pennsylvania whistleblower claim, there is a dispute of fact as to the actual reasons for Plaintiff's three-day suspension, and his termination. With respect to the First Amendment petition clause claim, there is a dispute of fact as to the reason for Plaintiff's termination. In order for the jury to determine whether Plaintiff was disciplined for the reasons cited by DEP or for improper reasons

related to his KPB report, the jury must be informed of the information on which the decision makers at DEP relied. Thus, the allegations that were considered by Defendant Reisinger and the human resources department are clearly admissible. To the extent that witnesses' fears of Plaintiff were communicated to the decision makers who disciplined Plaintiff, and were relied upon by those decision makers, these facts are relevant and admissible. However, allegations that Plaintiff intimidated or scared individuals after the facts that gave rise to this lawsuit are not relevant to any of the issues in this case. Thus, the Court will grant Plaintiff's motion in limine in part, precluding testimony that employees at DEP were subjectively afraid of Plaintiff, to the extent that such fears were not communicated to and relied upon by Defendants in disciplining Plaintiff. However, the Court will permit introduction of evidence upon which Defendants relied in determining whether and how to discipline Plaintiff.

**ACCORDINGLY**, on this 13th day of April 2012, **IT IS HEREBY ORDERED THAT**:

1. Defendants' motion to preclude reference to defense counsel's representation of perjured witnesses at their deposition (Doc. No. 146) is **GRANTED**;

2. Defendants' motion to preclude introduction of evidence related to the discipline of other DEP employees (Doc. No. 150) is **DENIED IN PART** and **GRANTED IN PART**, as follows:

    A. To the extent that Defendants seek to preclude Plaintiff from presenting evidence related to the discipline of Joseph K. or William D., the motion is **GRANTED**;

    B. To the extent that Defendants seek to exclude evidence of the discipline of any DEP employee, the motion is **DENIED**;

3. Defendants' motion to preclude reference to the false testimony of Donald Hagerich or Patricia Olenick (Doc. No. 152) is **GRANTED**; and

4. Plaintiff's motion in limine (Doc. No. 148) is **DENIED IN PART** and **GRANTED IN PART**, as follows:

A. Plaintiff's motion is **DENIED AS MOOT** to the extent that Plaintiff seeks to preclude Defendants from referring to his Bankruptcy or his termination from another employment position; and

B. Plaintiff's motion is **GRANTED** to the extent that Plaintiff seeks to preclude testimony that employees at DEP were subjectively afraid of Plaintiff, to the extent that such fears were not communicated to and relied upon by Defendants. However, Defendants may introduce testimony that they relied upon in deciding whether and how to discipline Plaintiff.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania